AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Oregon

FILED 19 FEB '19 15:13 USDC-ORP

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

The Cellular Telephone Assigned Call Number 971-332-2652 and IMEI: 259 461 096 772 790

Case No. '19 -MC- 127

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A hereto,

located in the ____________ District of Oregon, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), and 846 | Conspiracy to distribute the controlled substance (heroin), distribution and possession with the intent to distribute a controlled substance (heroin), and use of a communication facility to commit the offenses. |

The application is based on these facts:

See affidavit of DEA Special Agent Joshua Carr, which is attached hereto and incorporated herein by this reference.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of 30 days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Joshua Carr, Special Agent, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone at 3:00 a.m./p.m. *(specify reliable electronic means)*.

Date: 2/19/2019

Jolie A. Russo
*Judge's signature*

City and state: Portland, Oregon

Hon. Jolie A. Russo, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss: AFFIDAVIT OF JOSHUA CARR

**Affidavit in Support of an Application for a Search Warrant for Geolocation Data**

I, Joshua Carr, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since February 2015. My current assignment is the DEA Salem Resident Office in Oregon, investigating crimes related to violations of the Controlled Substances Act. My training and experience includes the completion of twenty-weeks of DEA Basic Agent Training in Quantico, Virginia. This training focused on offenses under the Controlled Substance Act, related crimes, and successful methods used by law enforcement to detect, investigate and prosecute said offenses. I am familiar with investigations of drug trafficking organizations, including methods of importation and distribution of controlled substances, and the laws relating to forfeiture of drug proceeds, assets purchased with drug proceeds, assets used to facilitate drug crimes, or used to conceal detection of drug crimes. I have participated in no fewer than forty-two investigations, including six wiretap investigations. I have investigated organizations trafficking different controlled substances including cocaine, fentanyl, heroin, and methamphetamine. These investigations have resulted in the seizure of controlled substances as well as U.S. currency and the prosecution of many defendants.

2. I submit this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(971) 332-2652**, with

International Mobile Equipment Identity ("IMEI") number 259 461 096 772 790 (hereinafter "**Target Cell Phone**"), whose wireless service provider is T-Mobile a company headquartered at 3625 132nd Ave SE, Bellevue, Washington, as described in Attachment A hereto. **Target Cell Phone** was activated on January 17, 2019, and is currently subscribed to "Jose Armando Lopez-Herrera at "3976 Rockwood Park Drive NE, Salem, Oregon." As explained below, I believe there is probable cause to obtain the location information as described in Attachment B hereto.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code Sections 841(a)(1), 843(b), and 846, have been committed, are being committed, and will be committed by Julio MADERO (hereinafter "MADERO"), and other co-conspirators both known and unknown who are yet to be identified, namely engagement in a conspiracy to distribute and possess with the intent to distribute a controlled substance, the distribution and possession with the intent to distribute a controlled substance, and the use of a communication facility to facilitate these felony drug offenses. There is also probable cause to believe that the location information of **Target Cell Phone**

described in Attachment B, will constitute evidence of these criminal violations and will lead to the identification of other individuals who are engaged in the commission of these offenses.

**Statement of Probable Cause**

**Description of Confidential Source ("CS-1")**

5. CS-1 is a subject who officers believe was involved in drug trafficking in the Salem area for several years. In 2014, TFOs Salas and Zuniga and SA Otte approached CS-1 and informed CS-1 that officers had reason to believe CS-1 was involved in drug trafficking. CS-1 was not arrested and is not facing any potential criminal charges. Since 2014, CS-1 has provided officers with information in exchange for monetary consideration. During officers' initial interview of CS-1, CS-1 admitted to CS-1's role in several drug trafficking activities in the past. CS-1 has no criminal record. I am familiar with information CS-1 has reported to officers related to this investigation as well as other unrelated investigations. I believe CS-1 is credible and reliable and much of the information provided by CS-1 has been corroborated by officers. Since 2014, CS-1 has provided information regarding target subjects in several different investigations conducted by Salem DEA. Much of this information has been used to help further these investigations and has helped officers obtain evidence necessary to arrest and prosecute several subjects as well as obtain probable cause to apply for search warrants and seize controlled substances and drug proceeds.

6. During 2018, officers became aware that CS-1 may have been involved in selling approximately one pound of methamphetamine to a drug trafficker who was subsequently arrested as part of a separate investigation. During that investigation, officers did not obtain sufficient evidence to prosecute CS-1 for their role in this transaction. SA Otte and TFO Zuniga

later questioned CS-1 about this incident. CS-1 admitted to his/her part in the transaction and explained what occurred. The officers involved with this interview, believe that CS-1 was honest and truthful about the incident. Despite CS-1's illegal activity, I believe that CS-1 continues to be honest with officers and that the information CS-1 provides is reliable and credible.

**Description of Source of Information 1 ("SOI-1")**

7. SOI-1 is a subject who has worked closely with officers over several years. SOI-1 has a criminal record which includes at least twenty arrest cycles. SOI-1's criminal history includes charges for drug possession, assault, kidnapping, and robbery. I am familiar with information SOI-1 has reported to officers related to this investigation as well as other unrelated investigations. I believe SOI-1 is credible and reliable and much of the information provided by SOI-1 has been corroborated by officers. In all the time SOI-1 has provided information to law enforcement, SOI-1 has never been found to be dishonest even to SOI-1's detriment. SOI-1 has provided information regarding target subjects in several different investigations conducted by Salem DEA. Much of this information has been used to help further these investigations and has helped officers obtain evidence necessary to arrest and prosecute several subjects as well as obtain probable cause to apply for search warrants and seize controlled substances and drug proceeds.

**Description of Confidential Defendant ("CD-1")**

8. CD-1 is a subject who officers believe has been involved in drug trafficking in the Salem area for several years. During officers' initial interview of CD-1, CD-1 admitted to CD-1's role in several drug trafficking activities in the past. CD-1 provided the information

contained within this affidavit in exchange for consideration regarding criminal charges CD-1 recently incurred. CD-1 has a criminal record which includes at least five arrest cycles. CD-1's criminal history includes charges for drug possession and theft. Based on Detective Garland's interview and interpretation, Detective Garland reports CD-1 is credible and reliable and much of the information provided by CD-1 has been corroborated by officers.

**Description of Confidential Defendant ("CD-2")**

9. CD-2 is a subject who officers believe has been involved in drug trafficking in the Salem area for several years. During officers' initial interview of CD-2, CD-2 admitted to CD-2's role in several drug trafficking activities in the past. CD-2 provided the information contained within this affidavit in exchange for consideration regarding criminal charges CD-2 recently incurred. CD-2 has a criminal record which includes at least 15 arrest cycles. CD-2's criminal history includes charges for drug possession, theft, forgery, and identity theft. Based on Detective Garland's interview and interpretation, Detective Garland reports CD-2 is credible and reliable and much of the information provided by CD-2 has been corroborated by officers.

**Identification of Target Cell Phone and Use of Target Cell Phone in Furtherance of Drug Trafficking**

10. On August 23, 2018, CS-1 reported to TFO Zuniga that a Hispanic male by the name of "Julio" was trafficking large amounts of heroin in Salem, Oregon. Through CS-1's statements, agents learned "Julio's" significant other was a woman named Vanessa GONZALEZ-Coria. The same day, TFO Zuniga, SA Thomas and I conducted surveillance of CS-1 meeting with "Julio" and I noticed "Julio" appeared to be approximately 26 years of age. During this meeting, I observed "Julio" driving a 2006 blue Dodge Grand Caravan bearing Oregon license: 502DZR (registered to 1307 Jodelle Court N, Keizer, Oregon). Following this meeting, TFO

Zuniga and I met with CS-1, who turned over a small amount of heroin and methamphetamine which CS-1 stated "Julio" had provided to CS-1 as a free sample. These drugs were seized and transferred to Salem Police Department for destruction per their SOP. As described later in this affidavit, I believe the "Julio" referenced above is MADERO.

11. On October 9, 2018, while conducting surveillance operations, I observed the 2006 blue Dodge Grand Caravan bearing Oregon license: 502DZR parked at the Salem Motorsports Automotive Shop at 3255 Fisher Road NE, Salem, Oregon. This shop is owned and operated by David MACHADO, a suspected heroin and methamphetamine dealer residing at 1317 Jodelle Court N, Keizer, Oregon. David MACHADO has been identified to law enforcement agents as a drug dealer in multiple other independent investigations.

12. I believe the presence of "Julio's" Dodge Grand Caravan at a shop owned by suspected heroin and methamphetamine dealer, David MACHADO; the Dodge Grand Caravan's registration address being next door to MACHADO's residence; and, a high frequency of phone calls between MACHADO and **Target Cell Phone** (as described later in this affidavit) are all indicators of MADERO's close relationship with other known drug traffickers.

13. On October 30, 2018, TFO Zuniga searched law enforcement databases and learned Vanessa GONZALEZ-Coria (the reported girlfriend of "Julio") had a child attending Auburn Elementary at 4612 Auburn Road NE, Salem, Oregon, approximately 0.7 miles from GONZALEZ-Coria's suspected residence at 928 Shores Street NE, Salem, Oregon. TFO Zuniga learned GONZALEZ-Coria listed a "Julio Madero" as an emergency contact with phone number 971-707-5272. IRS Eller issued an administrative subpoena to T-Mobile for phone

number 971-707-5272 and learned the phone was active from June 27, 2018 to October 27, 2018, and subscribed to Armando RAMIREZ at 3611 Rockwood Park Court NE, Salem, Oregon.

14. On January 8, 2019, TFO Zuniga and TFO Carney interviewed SOI-1 who stated Timothy VANCE was a methamphetamine and heroin trafficker based out of Keizer, Oregon who lived off Alder Street and was supplied by a young Hispanic male named "Julio". SOI-1 further stated "Julio's" significant other was a female named "Vanessa" and that "Julio" drives a black BMW sedan. SOI-1 later provided the number 971-707-5527 for "Julio". IRS Eller issued an administrative subpoena to T-Mobile for phone number 971-707-5527 and learned the phone was active from November 17, 2018 to at least January 16, 2019, and subscribed to Julio RAMIREZ at 1896 Rockwood Park #18, Salem, Oregon.

15. Based on the common descriptions of a drug dealer in Salem, Oregon named "Julio" dating a "Vanessa" and the two phone numbers commonly sharing similar subscriber names and similar addresses. I believe SOI-1 and CS-1 are both describing Julio MADERO.

16. On February 1, 2019, Salem PD Detective Garland interviewed CD-1 who described his/her heroin source of supply (SOS) as a Hispanic male in his mid 20's who speaks very little English. CD1 said his/her SOS drives either a nice Honda Civic or BMW and CD-1 will meet the SOS in various places within Marion County, Oregon. CD-1 admitted purchasing heroin from SOS approximately five days prior and paid $800 for one piece of heroin. Based on my training and experience, I know a "piece" of heroin is roughly 25 grams and the retail price for a piece of heroin in the Salem, Oregon area is between $700 and $900. CD-1 reported to Det. Garland that they purchased from the SOS multiple times. Although CD-1 did not know the SOS's name, CD-1 did provided a phone number for the SOS of 971-332-2652 **(Target Cell**

**Phone**). CD-1 stated they called this number to speak with the SOS and arrange drug deals. IRS Eller issued an administrative subpoena to T-Mobile for **Target Cell Phone** and learned the phone was active from January 17, 2019 to at least February 4, 2019, and subscribed to Jose Armando LOPEZ-Herrera at 3976 Rockwood Park Drive NE, Salem, Oregon. This phone number was assigned to IMEI: 359 461 096 772 790.

17. Based on my training and experience, I know it is common for drug traffickers to routinely change their phone numbers in a continuous effort to evade and thwart law enforcement detection. Administrative subpoenas for all three numbers bear similarities in the subscriber name and similarly fictitious addresses on Rockwood Park. As described below, all three phone numbers bear similar call patterns. For this reason, I believe the practice of replacing phone numbers is a common conduct among drug traffickers which MADERO is utilizing through the use of **Target Cell Phone**

18. The administrative subpoena returns reveal all three phone numbers (971-707-5272, 971-707-5527, and **Target Cell Phone**) have all called phone number 562-673-7110 (subscribed to Marcella CISNEROS at 11719 Centralia Street, Lakewood, California). Meanwhile both phones (971-707-5527 and **Target Cell Phone**) have called phone number 323-910-9416 (subscribed to David MACHADO at 1317 Jodelle Court, Keizer, Oregon), 971-273-9102 (subscribed to David MACHADO at 1317 Jodelle Court, Keizer, Oregon), and 503-990-3324 (subscribed to Tim VANCE at 3725 Pleasant View Drive NE, Keizer, Oregon).

19. On February 13, 2019, Salem PD Detective Garland interviewed CD-2 who described purchasing methamphetamine from "Tim." CD-2 stated CD-2 has purchased meth from "Tim" at least ten times within the past year, the largest of which was one pound for

$3,200. CD-2 described "Tim" as an older, white male who lives off Alder Street in Keizer. CD-2 reported "Tim" drives a white convertible Mitsubishi Eclipse. On February 14, 2019, Timothy VANCE was arrested by Lincoln City PD following a burglary investigation, just prior to his arrest, VANCE was driving a white 2008 Mitsubishi Eclipse Convertible. During a search of the Eclipse, detectives located a small bag of suspected methamphetamine and a pipe.

20. I believe the drugs and drug paraphernalia located in the Eclipse VANCE was operating is indicative of VANCE's drug use and drug possession. I believe this evidence lends further credence to the credibility of SOI-1 and CD-2. Furthermore, I believe this credibility lends reason to support the statements SOI-1 made regarding "Julio."

21. Based on the details described above, I believe there is probable cause that MADERO is a drug trafficker co-conspiring with VANCE, MACHADO, CD-1, and others both known and unknown. Furthermore, it is my belief that MADERO is now using **Target Cell Phone** to facilitate drug trafficking activities in violation of Title 21, United States Code Sections 841(a)(1), 843(b), and 846.

22. In my training and experience, I have learned that Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data

from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

23. Based on my training and experience, I know that Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available.

24. Based on my training and experience, I know that Provider can collect cell-site data about **Target Cell Phone**.

**Conclusion**

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **Target Cell Phone** outside of daytime hours.

26. I further request that the Court direct Provider to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Provider. I also request that the Court direct Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information

described in Attachment B unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of **Target Cell Phone** on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

27. Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney Scott Kerin. I was informed that it is AUSA Kerin's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

**Request for Delaying Notice**

28. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Based upon my knowledge, training, and experience, it is my belief that providing immediate notice to subscriber or user of the Target Cell Phone may result in the endangerment of the life or physical safety of an individual, flight from prosecution, the destruction of or tampering with evidence, intimidation of potential witnesses, and/or otherwise seriously jeopardize an investigation. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of

any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

**Request for Sealing**

29. I further request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, the attachments, and the requested search warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrant may adversely affect the integrity of the investigation.

Joshua Carr
______________________________
Special Agent Joshua Carr
Drug Enforcement Administration

Subscribed and sworn to me telephonically, in accordance with the requirements of Fed. R. Crim. P. 4.1, this 19th day of February 2019.

Jolie A Russo
______________________________
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (971) 332-2652, with International Mobile Equipment Identity ("IMEI") number 259 461 096 772 790 (hereinafter "Target Cell Phone"), whose wireless service provider is T-Mobile a company headquartered at 3625 132nd Ave SE, Bellevue, WA 98006.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to Be Seized**

All information about the location of the Target Cellphone described in Attachment A for a period of thirty days, during all times of day and night, and the status of the device and the account associated with the device (i.e., whether the device is active or operational and whether the account is in good standing, canceled, suspended, etc.). "Information about the location of the Target Cellphone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile (referred to hereinafter as "Provider"), Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cellphone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Provider for reasonable expenses incurred in furnishing such facilities or assistance.

////

////

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**Attachment B**